# EXHIBIT 1

Case 8:21-cv-00514-DOC-JDE Document 1-1 Filed 03/18/21 Page 2 of 16 Page ID #:6
Electronically Filed by Superior Court of California, County of Orange, 09/18/2020 16:09:00.
30-2020-01161069-CU-IC-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Hailey McMaster, Deputy Clerk.

| | |
|---|---|
| 1 | NEWMEYER & DILLION LLP |
| | GREGORY L. DILLION, CBN 93712 |
| 2 | Greg.Dillion@ndlf.com |
| | ERIC J. ROLLINS, CBN 265417 |
| 3 | Eric.Rollins@ndlf.com |
| | C. KENDIE SCHLECHT, CBN 190978 |
| 4 | Kendie.Schlecht@ndlf.com |
| | 895 Dove Street, Fifth Floor |
| 5 | Newport Beach, California 92660 |
| | (949) 854-7000; (949) 854-7099 (Fax) |
| 6 | |
| 7 | Attorneys for Plaintiffs |
| | SHEA PROPERTIES MANAGEMENT |
| | COMPANY, INC. and DYER BUSINESS PARK, |
| 8 | LLC |

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ORANGE

Assigned for All Purposes

Judge Linda Marks

| | | |
|---|---|---|
| SHEA PROPERTIES MANAGEMENT COMPANY, INC., a Delaware corporation; DYER BUSINESS PARK, LLC, a California corporation, | | CASE NO.: 30-2020-01161069-CU-IC-CJC |
| | | **COMPLAINT FOR** |
| Plaintiffs, | | (1) **BREACH OF WRITTEN CONTRACT;** |
| vs. | | (2) **DECLARATORY RELIEF;** |
| THE CONTINENTAL INSURANCE COMPANY, a Pennsylvania corporation; PACIFIC CONSTRUCTION GROUP, a California corporation; and DOES 1 through 50, inclusive, | | (3) **DECLARATORY RELIEF; AND** |
| | | (4) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| | | **JURY DEMAND** |
| Defendant. | | |

## GENERAL ALLEGATIONS

Plaintiffs Shea Properties Management Company, Inc. ("Shea Management") and Dyer Business Park, LLC ("Dyer Business Park") (collectively, "Plaintiffs"), for causes of action against defendant The Continental Insurance Company ("CNA"), defendant Pacific Construction Group ("PCG"), and Does 1 through 50, and each of them, with knowledge as to themselves and otherwise on information and belief, claim and allege as follows:

3590.127 / 8950350.1

COMPLAINT

1.      This coverage action seeks redress for the breach of contract and bad faith actions of an insurance company, CNA, who unreasonably and without proper cause has denied Plaintiffs, its insureds, the insurance policy benefits to which they are entitled.

2.      CNA has wrongfully denied policy benefits to Plaintiffs by refusing to timely and properly provide coverage to Plaintiffs for damages and construction delays relating to sustained and continuous rainfall at the Project, which is not excluded from coverage under the applicable insurance policy.

3.      In addition, this action seeks declaratory relief regarding a dispute between Plaintiffs and CNA over CNA's obligations and duties to immediately, fully, and completely provide coverage to Plaintiffs under the applicable insurance policy, as well as a declaration that PCG is bound by the interpretation of the Policy and any reduction in limits as a result of this coverage action.

4.      CNA's bad faith, unreasonable, and improper actions have left Plaintiffs no choice but to bring this coverage action.

## THE PARTIES

5.      Plaintiff Shea Properties Management Company, Inc. ("Shea Properties") is now, and at all times relevant to this action has been, a corporation incorporated under the laws of the State of Delaware doing business in the County of Orange, State of California.

6.      Plaintiff Dyer Business Park, LLC ("Dyer Business Park") is now, and at all times relevant to this action has been, a California corporation doing business in the County of Orange, State of California.

7.      Shea Properties and Dyer Business Park are collectively referred to herein as "Plaintiffs."

8.      Plaintiffs are informed and believe, and based thereon allege, that CNA is a Pennsylvania corporation, and was at all times relevant to this action, an insurance

company licensed and otherwise authorized to do business, and doing business, in the County of Orange, State of California.

9. Plaintiffs are informed and believe, and based thereon allege, that PCG is a California corporation, and was at all times relevant to this action, a company licensed and otherwise authorized to do business, and doing business, in the County of Orange, State of California.

10. Does 1 through 25 are persons, corporations or other entities that reside in, or are authorized to do, and are doing, insurance business in the State of California. The true identities of Does 1 through 25 are currently unknown to Plaintiffs and Plaintiffs therefore pray for leave to amend this complaint to assert the proper names of each such Doe defendant when their identities are discovered.

11. Defendants Does 26 through 50 are persons, corporations or other entities that reside in or are authorized to do and are doing business in the State of California. The true identities of Does 26 through 50 are currently unknown to Plaintiffs, and Plaintiffs therefore pray for leave to amend this complaint to assert the proper names of each such Doe defendant when their identities are discovered. Each of Does 26 through 50 was the director, officer, managerial agent, employee, broker, agent, predecessor, successor, joint-venturer, conspirator, alter ego and/or representative of one or more of the other defendants named herein or identified as Does 1 through 25, and acted with permission, authorization and/or ratification and consent of such other defendants and their officers, directors, or managerial agents, or represented that they had permission, authorization and/or ratification and consent of such other defendants.

12. For purposes of this complaint, and wherever appropriate therein, CNA and Does 1 through 50 are hereinafter sometimes collectively referred to as "Insurer Defendants."

13. Plaintiffs are informed and believe, and based thereon allege, that each fictitiously-named defendant was in some way responsible for, participated in, or

contributed to the matters of which Plaintiffs complain, and has legal responsibility for those matters.

## JURISDICTION AND VENUE

14. Jurisdiction and venue are proper in this Court for a variety of reasons, including, but not limited to:

   a. The amount in controversy in this action is in excess of the jurisdictional minimum of this Court;

   b. The underlying action for which coverage is sought under the written insurance policies at issue in this action relates to losses that occurred in California;

   c. The written insurance policy at issue in this action relates to losses that impact the rights and obligations of Plaintiffs, which are located in and regularly conduct business in Orange County, California;

   d. One or more of the contracts at issue in this action were negotiated and to be performed in Orange County, California;

   e. Plaintiffs regularly conduct business in Orange County, California;

   f. PCG regularly conducts business in Orange County, California; and

   g. CNA or Does 1 through 50, inclusive, regularly conducts business in Orange County, California.

## NATURE OF THIS PROCEEDING

15. Plaintiffs seek damages on account of the material breaches by certain defendants and each of them of their respective contractual obligations to Plaintiffs, including without limitation compensatory damages and exemplary damages due to the tortious breaches of the implied covenant of good faith and fair dealing.

16. As further alleged below, Insurer Defendants have materially breached their obligations to Plaintiffs, forcing Plaintiffs to incur damages because of their improper, unreasonable, tortious, intentional, fraudulent, malicious, and oppressive conduct.

# THE POLICY

17. The policy at issue is called a Builders All-Risk Policy. Plaintiffs are informed and believe, and based thereon allege, that CNA executed and delivered the policy to PCG, which afforded coverage to Plaintiffs from July 23, 2018 to September 23, 2019. The policy is referred to herein as the "Policy." The Policy is summarized in the following chart:

| Insurance Company | Insureds | Policy Number | Coverage Period |
|---|---|---|---|
| Continental Insurance Company | Dyer Business Park, LLC; Shea Properties Management Company, Inc., and all other insureds | C 6072406876 | 7/23/18-9/23/19 |

18. The Policy provides, in pertinent part:

> **A. COVERAGE**
> Subject to the Limits of Insurance shown on the Declarations and all other policy provisions, we cover direct physical loss or damage to Covered Property from any Covered Cause of Loss. . . .
>
> **1. Covered Property**, as used in this coverage form, mean "hard costs." Such property may be your property of the property of others.
> . . .
>
> **B. EXCLUSIONS**
> **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause of event that contributes concurrently or in any sequence to the loss.
> . . .
>
> **b. Flood**
> "Flood," except fire or explosion loss or damage resulting from "flood" will not be considered loss or damage by "flood."
>
> **G. DEFINITIONS**
> . . .
>
> **14.** "Flood" means the following, whether caused by natural occurrences or acts or omissions of man:
> **a.** A general ***and*** temporary condition of partial or complete inundation of normally dry land areas and/or property situated thereon, including:

- 5 -

      **(1)** The overflow of inland or tidal waters, waves or tidal waves, tsunami, or spray from any of the foregoing;
      **(2)** The unusual and rapid accumulation or runoff of surface waters from any source; and
      **(3)** Release of water held by a dam, levee or dike or by a water or flood control device;
  **b.** Mudslide or mudflow caused by or precipitated by accumulation of water on or under the ground;
  **c.** Water under the ground surface pressing on, or flowing or seeping through;
      **(1)** Foundations, walls, floors or paved surfaces;
      **(2)** Basements, whether paved or not; or
      **(3)** Doors, window or other opening;
  **d.** Water that backs up or overflows from a sewer, drain or sump.

19. The Policy also covers Soft Costs incurred during the delay of a project and provides, in pertinent part:

> **d. Soft Costs**
> We cover "soft costs" you incur during the "period of delay" as a result of a delay in the completion of a covered "project." The delay must have been caused by direct physical loss to "time element property" at a "jobsite" from a Covered Cause of Loss.
>
> . . .
>
> **32. "Soft Costs"** means any of the following additional expenses that are over and above the expenses you would otherwise incur in completion of the "project":
>
> **a.** Interest, meaning the additional interest on money borrowed to finance construction or repair;
>
> **b.** Taxes, meaning additional realty taxes and other assessments; and
>
> **c.** Insurance, meaning additional insurance premiums.

## THE PROJECT

20. Plaintiffs own a commercial development located at 666 E. Dyer Road, Santa Ana, CA 92705, commonly referred to as Shea Dyer Business Park (the

"Project"). PCG entered into a written contract with Plaintiffs to construct the Project. Plaintiffs are additional insureds under the Policy.

21. Between November 2018 and March 2019, multiple weeks of sustained rains occurred at the Project, which over-saturated the soil and caused significant construction delays and damages to the Project. Continuous water saturation of the soil also added costs to address the wet soil and achieve sufficient dryness for construction to continue. Each rain event during this time period added costs to properly remediate and dry the affected soil.

22. As a result of the numerous rain delays, Plaintiffs have incurred damages, including "Soft Cost" damages as they are defined in the Policy, totaling in excess of $4.5 million, which include excess construction costs caused by rain delays, additional interest on money borrowed to finance construction at the property, the cost of capital for use of Plaintiffs' equity, property taxes, personnel expenses, and additional insurance premiums. Plaintiffs' costs continue to accrue as a result of the delays and damage caused by the sustained rain at the Project.

## CNA'S REFUSAL TO AFFORD COVERAGE TO PLAINTIFFS

23. PCG properly tendered a claim to CNA on December 14, 2018 for damages caused as a result of the continuous rainfall at the Project.

24. After inspecting the property on December 27, 2018, CNA adjuster Joshua Schroth issued a coverage position letter to PCG on March 26, 2019, which denied coverage. Although the damages were caused by rainfall over a prolonged period of time, CNA claimed that coverage was precluded by the Policy's flood exclusion.

25. On or about July 1, 2019, Plaintiffs supplemented the tender and provided CNA evidence of the damages and significant construction delays caused by rain at the Project. Plaintiffs provided additional detail regarding the damages, including a summary of the rains experienced at the Project, and advised that the Project suffered significant construction delays and damages due to multiple weeks of sustained rains across many months that over-saturated the soil. CNA was also notified that throughout

- 7 -

the periods of sustained rainfall, construction was periodically stopped or delayed in order to allow the wet soil to stabilize and dry, only to experience additional rain that varied in length and severity through March 2019.

26. On or about July 17, 2019, CNA sent its adjuster, Scott Benedict ("Benedict"), to conduct a second inspection of the site at the Project. Plaintiffs provided Benedict and CNA with all requested documents and advised that Plaintiffs would provide a preliminary statement of damages incurred as a result of the sustained rainfall.

27. On or about August 22, 2019, Plaintiffs provided CNA with a preliminary statement of damages and requested a revised coverage position letter.

28. On or about September 30, 2019, Plaintiffs were notified that a third adjuster, Terry Watkins ("Watkins") was assigned to investigate Plaintiffs' claim and that a third inspection of the site at the Project would be required. Plaintiffs provided CNA with an updated statement of damages and back-up documentation on October 16, 2019.

29. On or about November 5, 2019, Watkins inspected the site at the Project with CNA's retained expert, William Foster ("Foster"). Plaintiffs are informed and believe and based thereon allege that Foster provided his report to Watkins around mid-December 2019 and that the report was being reviewed by CNA's "upper management." Neither Plaintiffs nor PCG received a copy of Foster's report.

30. Over four months after CNA's third site inspection and months after Foster provided his report, on or about March 11, 2020, CNA provided a supplemental coverage position letter which merely reiterated CNA's initial denial of coverage on March 26, 2019 based on the flood exclusion in the Policy. CNA's so-called "supplemental" coverage position letter came after investigating for nearly a full year, assigning the claim to three different adjusters, and conducting three site visits at the Project. After this investigation, CNA based its reaffirmation of denial on the same reasoning that it used in its initial denial.

///

31. The terms and conditions of the Policy do not exclude coverage for damage caused by rain. The multiple sustained rains that took place from December 2018 to March 2019 do not constitute a "flood" as it is defined in the Policy. The damage to the property was not caused by a mudslide, mudflow, seepage through foundations, basements or doors, or water backing up or overflowing from a sewer. The damage also was not caused by a "general and temporary condition" constituting a flood as the construction delays occurred by heavier than normal rains over a four-month period. There was no single flood event that would preclude coverage. The damages suffered by Plaintiffs are covered under the Policy.

## FIRST CAUSE OF ACTION

**(For Breach of Written Contract Against Insurer Defendants)**

32. Plaintiffs expressly incorporate by this reference each and every allegation in the preceding paragraphs of this complaint as though fully set forth herein.

33. Plaintiffs have duly performed each and every covenant and/or condition of the Policy issued by CNA to be performed by Plaintiffs or have been excused from so performing as a result of Insurer Defendants' breach of the Policy as set forth herein.

34. Insurer Defendants, among other things, were obligated under the Policy to conduct an adequate, independent, and reasonable investigation of any claims and to timely and reasonably provide coverage for Plaintiffs' claims.

35. Insurer Defendants have breached their obligations under the Policy by wrongfully, unreasonably, and improperly refusing to acknowledge coverage under the Policy for Plaintiffs' damages, as discussed more fully in paragraphs 17-31 and incorporated by reference as if set forth in full here.

36. Furthermore, Insurer Defendants violated section 2695.7 of Title 10 of the California Code of Regulations, which requires that upon receiving proof of claim, an insurer must "immediately, but in no event more than forty (40) calendar days later, accept, or deny the claim." Insurer Defendants failed to conduct a reasonable

investigation of Plaintiffs' claims and have failed to timely respond to Plaintiffs' claims within 40 days.

37. As a direct and proximate result of Insurer Defendants' breach of their contractual duties, Plaintiffs have been damaged in an amount to be shown according to proof at trial but which is no less than $4.5 million. As a direct and proximate result of CNA's breach of its contractual duties, Plaintiffs have also incurred substantial attorneys' fees, costs and expenses in loss adjustment, mitigation, investigation, interest on unpaid or late paid amounts, and other costs and expenses in an amount within the jurisdictional limits of this Court, according to proof.

## SECOND CAUSE OF ACTION

### (For Declaratory Relief Against Insurer Defendants)

38. Plaintiffs expressly incorporate by this reference each and every allegation in the preceding paragraphs of this complaint as though fully set forth herein.

39. There presently exists an actual controversy between Plaintiffs and Insurer Defendants concerning Insurer Defendants' obligations and duties owed to Plaintiffs pursuant to the Policy, as discussed more fully in paragraphs 17-31 and incorporated by reference as if set forth in full herein. Plaintiffs request a judicial declaration that the sustained rainfall experienced at the Project does not constitute a flood, and that the Policy requires Insurer Defendants to pay for damages and construction delays caused by the continuous rainfall at the Project.

40. Such declarations are necessary and appropriate to determine the rights and duties of the parties under the Policy.

## THIRD CAUSE OF ACTION

### (For Declaratory Relief Against PCG)

41. Plaintiffs expressly incorporate by this reference each and every allegation in the preceding paragraphs of this complaint as though fully set forth herein.

42. In light of the coverage dispute between Plaintiffs and Insurer Defendants, as discussed more fully in paragraphs 17-31 and incorporated by reference as if set forth

in full herein, Plaintiffs request a judicial declaration that PCG is bound by the results of this coverage action. PCG is the first named insured with certain rights and obligations under the Policy and with defined limits. Plaintiffs' claim under the Policy will determine interpretation of the Policy and erode its limits. PCG does not want to see its policy limits reduced. There presently exists an actual controversy between Plaintiffs and PCG in this regard. Thus, this coverage action cannot be fully resolved unless PCG is bound by the interpretation of the Policy and reduction in limits.

43. Such declarations are necessary and appropriate to determine the rights and duties of the parties under the Policy.

## FOURTH CAUSE OF ACTION

**(For Breach of the Implied Covenant of Good Faith and Fair Dealing Against Insurer Defendants)**

44. Plaintiffs expressly incorporate by this reference each and every allegation in the preceding paragraphs of this complaint as though fully set forth herein.

45. In every insurance contract, there is an implied covenant of good faith and fair dealing. This covenant obligates Insurer Defendants to fairly consider Plaintiffs' interests in its claims for insurance coverage pursuant to the Policy. As part of that obligation, Insurer Defendants are and were at all times required to give Plaintiffs' interests at least as much consideration as they give their own.

46. Insurer Defendants at all material times had the duty and legal obligation to act fairly and in good faith to Plaintiffs in carrying out their responsibilities under the Policy and to promptly and reasonably investigate and provide payment for claims made by Plaintiffs.

47. Plaintiffs are informed and believe, and based thereon allege, that Insurer Defendants breached their obligation to act fairly and in good faith toward Plaintiffs by acting unreasonably or without cause, including, without limitation by one or more of the following:

a. requiring multiple site visits after originally denying the claim, only to summarily deny Plaintiffs' claim on identical grounds as the original denial;

b. requiring expert inspections after originally denying the claim, only to summarily deny Plaintiffs' claim on identical grounds as the original denial;

c. requiring additional site visits and expert inspections thereby delaying CNA's revised coverage opinion for nearly a year when neither the site visit nor the expert inspections were to observe any flood-like condition because the damaging rains had long since stopped and much of the rain damage to the soil had been remediated;

d. reassigning the claim to three different adjusters for no other purpose than to delay issuing a revised coverage opinion for nearly a year and/or "rubber stamping" the original denial;

e. failing to provide immediate, full and complete coverage for the damages and construction delays caused by the sustained, continuous rainfall at the Project and unreasonably delaying payment to Plaintiffs;

f. failing to conduct reasonable, prompt, thorough, objective, and unbiased investigations into claims, as evidenced, by among other things, through CNA's nearly year-long investigation after issuing its initial denial, only to base its second denial of coverage on the same bases as its first denial;

g. wrongfully and unreasonably denying Plaintiffs' claim for coverage of the loss;

h. basing coverage decisions on a desire to reduce or avoid obligations to Plaintiffs;

  i. basing coverage decisions on a desire to lower its financial obligation to Plaintiffs;

  j. placing their own financial interests ahead of their insured's bests interests; and

  k. taking the actions referenced in sub-paragraphs a. through k. referenced above as part of a systematic and deliberate scheme to withhold policy benefits due to Plaintiffs.

48. Plaintiffs are informed and believe, and based thereon allege, that specific factual allegations as to the fraudulent, malicious, and oppressive conduct of CNA with respect to the Policy include, but are not limited to, the factual allegations contained in paragraphs 17-31 and 47 and are incorporated by reference as if set forth in full herein.

49. Plaintiffs are informed and believe, and based thereon allege, that the officers, directors, managing agents, authorized agents, and/or employees of CNA and/or other Insurer Defendants participated in, authorized and ratified the wrongful conduct alleged above.  Each specific individual or representative of CNA and/or Insurer Defendants is believed to have express or implied authority to take the actions alleged above and acted within that authority at all times relevant to this action.

50. As a result of Insurer Defendants' bad faith conduct, Plaintiffs have incurred substantial attorneys' fees, costs, and expenses associated with the damages and significant construction delays caused by the continuous rainfall at the Project, investigation, and/or other costs and expenses as a result of the aforementioned damages and delays, and have been required to bring this complaint to enforce their rights as an insured under the Policy.  Plaintiffs are entitled to recover as damages against Insurer Defendants all the aforementioned fees, costs, and expenses which they have incurred as a result of Insurer Defendants' breaches and bad faith conduct, together with interest thereon.  Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, according to proof.

51. Plaintiffs are further entitled to recover as damages against Insurer Defendants for all fees, expenses, and costs incurred in this action to enforce their rights and benefits under the Policy, plus interest thereon, in an amount to be proven at trial. (*Brandt v. Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211].)

52. The above-described conduct of Insurer Defendants has been and continues to be unreasonable, capricious, and arbitrary, and constitutes a breach of the covenant of good faith and fair dealing contained in the Policy. Additionally, Plaintiffs are informed and believe, and based thereon allege, that Insurer Defendants' acts constitute a systematic, methodical, and general scheme and pattern and practice to improperly, unfairly, and unreasonably deprive Plaintiffs of the benefits of insurance coverage to which they are entitled.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

### ON THE FIRST CAUSE OF ACTION

1. For compensatory damages according to proof.

### ON THE SECOND CAUSE OF ACTION

2. For a declaratory judgment determining the rights and obligations of Plaintiffs and Insurer Defendants under the terms of the Policy, and that the Policy requires CNA to provide full coverage for damages and construction delays caused by the sustained and continuous rainfall at the Project.

### ON THE THIRD CAUSE OF ACTION

3. For a declaratory judgment that PCG is bound by the results of this coverage action as the first named insured.

### ON THE FOURTH CAUSE OF ACTION

4. For compensatory damages according to proof;

5. For attorneys' fees incurred by Plaintiffs to obtain the benefits owed under the Policy, according to proof (*Brandt v. Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211]); and

6. For exemplary damages, according to proof.

## ON ALL CAUSES OF ACTION

7. For costs of suit herein;

8. For interest on this sum at the prevailing legal rate from the date first incurred until paid; and

9. For all such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to California Code of Civil Procedure section 631 subdivision (a).

Dated: September 18, 2020        NEWMEYER & DILLION LLP

By: _____
Greg Dillion
Eric J. Rollins
C. Kendie Schlecht
Attorneys for Plaintiffs
SHEA PROPERTIES MANAGEMENT COMPANY, INC. and DYER BUSINESS PARK, LLC

- 15 -
3590.127 / 8950350.1
COMPLAINT